UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| CLARENCE R. THOMAS, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 1:11-CV-00355 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Clarence Thomas appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Thomas applied for SSI in August 2006, alleging that he became disabled as of April 7, 2003. (Tr. 128-30.) The Commissioner denied his application initially and upon reconsideration, and Thomas requested an administrative hearing. (Tr. 31, 71-119.) On October 27, 2008, Administrative Law Judge ("ALJ") Yvonne Stam conducted a hearing at which Thomas (who was represented by counsel), his friend, and a vocational expert testified. (Tr. 40-70.)

On August 10, 2009, the ALJ rendered an unfavorable decision to Thomas, concluding that he was not disabled because he could perform a significant number of jobs in the economy

---

[1] All parties have consented to the Magistrate Judge. (Docket # 15); *see* 28 U.S.C. § 636(c).

despite the limitations caused by his impairments. (Tr. 31-39.) The Appeals Council denied Thomas's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 17-27.)

Thomas filed a complaint with this Court on October 11, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) He advances just one argument in this appeal—that the ALJ failed to properly evaluate the opinion of Ms. Ellsworth, a psychiatric nurse. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 8-11.)

## II. FACTUAL BACKGROUND[2]

### *A. Background*

At the time of the ALJ's decision, Thomas was forty-eight years old; had an eleventh-grade education with some special education classes; and had past work experience as a grass cutter and bobcat driver. (Tr. 38, 128, 146, 164.) He alleges disability due to lower back pain and depression. (Opening Br. 2). Thomas does not challenge the ALJ's findings with respect to his physical impairments; therefore, the Court will focus on the evidence pertaining to his mental limitations.

### *B. Thomas's Testimony at the Hearing*

At the hearing, Thomas stated that he lives independently in a subsidized apartment. (Tr. 45.) His typical day involves watching television from a reclined position most of the day; he performs only minimal household chores, and his sisters or a friend bring him groceries or take him to the store. (Tr. 52-53, 57.) When asked why he thought he cannot work, Thomas explained that he has constant lower back pain that shoots down his left leg, which then causes

---

[2] In the interest of brevity, this opinion recounts only the portions of the 396-page administrative record necessary to the decision.

him headaches and pain in his left arm and chest. (Tr. 46, 48-49.) Due to his limited finances, he takes only over-the-counter pain medication, which causes him stomach problems. (Tr. 49, 57, 60-62.) He has difficulty sleeping due to his pain. (Tr. 55-57.) Thomas also stated that he feels depressed and constantly worries. (Tr. 55, 58.) He attended weekly group therapy at Park Center at one point, but then began to miss sessions due to his pain and transportation difficulties. (Tr. 59.) He testified that he had not used alcohol since 2003. (Tr. 63.)

C. *Summary of the Medical Evidence*

Thomas started receiving mental health services at Park Center in November 2006 after filing his application for SSI; he visited Park Center just seven times between November 2006 and July 2008. At his first visit, he was seen by clinician Danielle Wardell, and he reported a depressed mood, difficulty sleeping, and anxiety about money. (Tr. 285-87.) She assigned him a diagnosis of mood disorder, not otherwise specified ("NOS"), and a current Global Assessment of Functioning ("GAF") score of 40.[3] (Tr. 286.)

In December 2006, Donna Unversaw, Ph.D., a state agency psychologist, reviewed Thomas's record and concluded that he had "mild" limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (Tr. 297-309.) Dr. Unversaw noted that Thomas alleged only physical problems in his application for

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoids friends, neglects family, and is unable to work). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

SSI. (Tr. 309; *see* Tr. 159.) She opined that although Thomas represented that he had attended special education classes in school, his work history of one-and-a-half years with the same employer and his ability to drive, shop, and use money and food stamps suggested that the classes were only for a learning disability. (Tr. 309.) Dr. Unversaw concluded that the evidence was not suggestive of a severe mental disorder. (Tr. 309.) Her opinion was later affirmed by a second state agency psychologist. (Tr. 321.)

In February 2007, Viann Ellsworth, a psychiatric nurse at Park Center, evaluated Thomas; the evaluation was later countersigned by Dr. Larry Lambertson. (Tr. 366-72.) On mental status exam, Thomas's behavior was somewhat withdrawn and his mood somewhat depressed and anxious. (Tr. 367.) His affect was blunted, and his insight and judgment were limited to some extent; his thought content showed themes of fearfulness, helplessness, and hopelessness. (Tr. 367.) She assigned him a GAF of 45 and diagnosed him with a mood disorder due to pain secondary to degenerative disk disease with depressed and anxious features. (Tr. 367.)            In April 2007, clinician Bambi Rowan of Park Center evaluated Thomas, and he again reported anxiety, depression related to his chronic pain, and excessive worrying about money. (Tr. 358-63.) His insight and judgment, however, were normal. (Tr. 359.) A treatment plan review reflected a diagnosis of mood disorder NOS and a GAF of 40. (Tr. 359.) In June 2007, a treatment plan review indicated a diagnosis of mood disorder due to a general medical condition and alcohol dependence; he was assigned a GAF of 40. (Tr. 355.) He had not attended a therapy session in the past five months. (Tr. 356.)

In October 2007, Thomas returned to Ms. Ellsworth, reporting that he was doing "pretty good" on his medications but that he was worried about housing. (Tr. 353.) On mental status

4

exam, he exhibited a blunt affect, concrete thought form, and helplessness in thought content, but no memory problems or suicidal ideation. (Tr. 354.) In December, she documented that he had an anxious and depressed mood, a blunt affect, poor insight and judgment, and helpless thought content, but no memory problems or suicidal ideation. (Tr. 349-50.) His treatment and response were described as "stable." (Tr. 350.)

In March 2008, Ms. Ellsworth wrote that Thomas demonstrated an appropriate mood, good insight and judgment, coherent thought form, no memory problems, no ideation, and a "stable" treatment response. (Tr. 345-36.) His affect, however, was blunted, and his thought content was helpless. (Tr. 345-46.) She indicated that his medications adequately addressed his symptoms and encouraged him to "keep busy." (Tr. 347.) Mental status examinations in May and July 2008 each revealed normal mental findings and a "stable" treatment response. (Tr. 338-40, 379-81.)

In January 2009, Ms. Ellsworth completed a mental impairment questionnaire on Thomas's behalf, indicating a diagnosis of mood disorder due to pain secondary to degenerative disk disease with depressed and anxious features. (Tr. 390-92.) She assigned a current and highest-past-year GAF of 55 and listed the following symptoms: poor memory, sleep and mood disturbance, irrational fears, persistent anxiety, social isolation, history of substance abuse, pathological dependence or passivity, and difficulty thinking or concentrating. (Tr. 390.) She estimated that he would miss more than four days a month due to his mental impairments and that the added stress of working would overwhelm his coping ability. (Tr. 392.)

Ms. Ellsworth also completed a medical source statement concerning Thomas's work-related mental abilities. (Tr. 393-96.) She penned that he had "no useful ability to function" to:

5

understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; make simple work-related decisions; complete a normal workday or workweek; perform at a consistent pace; interact appropriately with the public; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation. (Tr. 393, 395.) She acknowledged, however, that Thomas had a "fair" ability to understand, remember, and carry-out simple instructions and a "good" ability to maintain socially appropriate behavior and get along with peers. (Tr. 393, 395.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner

6

are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*.

## IV. ANALYSIS

### *A. The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Thomas is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

7

(7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

## B. *The ALJ's Decision*

On August 10, 2009, the ALJ rendered her opinion. (Tr. 31-39.) She found at step one of the five-step analysis that Thomas had not engaged in substantial gainful activity since his application date, and at step two, that his lower back pain and depression were severe impairments. (Tr. 33.) At step three, she determined that Thomas's impairment or combination of impairments did not meet or equal a listing. (Tr. 33.) Before proceeding to step four, the ALJ found Thomas's subjective complaints not entirely credible and assigned the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except that he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and he can never climb ladders, ropes, or scaffolds. In addition, the claimant can have only brief interactions with others and he cannot perform tasks that require a fast pace.

(Tr. 33-34.)

At step four, the ALJ found that Thomas had no past relevant work. (Tr. 38.) The ALJ then concluded at step five that Thomas could perform a significant number of jobs in the economy, including small products assembler, cleaner/maid, and laundry folder. (Tr. 39.) Therefore, Thomas's claim for SSI was denied. (Tr. 39.)

## C. *The ALJ's Consideration of Ms. Ellsworth's Opinion*
## *Is Supported by Substantial Evidence*

Thomas argues that the ALJ's decision to discount the opinion of Ms. Ellsworth—a psychiatric nurse at Park Center who opined that he would likely be absent more than four days per month and that his functioning would decrease if he tried to work full time—is not supported

8

by substantial evidence. Contrary to Thomas's assertion, the ALJ's decision to assign lesser weight to Ms. Ellsworth's restrictive opinion is amply supported by the record.

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e); *see* SSR 96-5p. With respect to mental limitations, the ALJ assigned Thomas an RFC that limited him to jobs that encompass "only brief interactions with others" and do not require him to "perform tasks that require a fast pace." (Tr. 33.) In doing so, the ALJ discounted Ms. Ellsworth's more limiting opinion, finding it inconsistent with the mental status exam results, treatment course, and GAF scores indicating that Thomas had improved after August 2007.

As a nurse, Ms. Ellsworth is considered an "other source" under Social Security Ruling 06-03P. Opinions from "other sources" should be evaluated using the applicable factors set forth in 20 C.F.R. § 416.927 for weighing medical opinions from "acceptable medical sources." SSR 06-03p, 2006 WL 2329939. "Not every factor for weighing opinion evidence will apply in every case." *Id*. The evaluation of an opinion from an "other source" "depends on the particular facts in each case." *Id*. Therefore, "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id*.

Thomas challenges the reasons provided by the ALJ for discounting Ms. Ellsworth's opinion. He turns first to the following statement made by the ALJ when analyzing the GAF scores: "[T]he more restrictive assessments and the GAF scores that are lower than 50 are not supported by the claimant's mental status examination findings as reported by Park Center, except for his findings during the period from November, 2006 until August, 2007." (Tr. 36.)

9

Thomas criticizes this characterization of the GAF scores, arguing that "there were no GAF scores under 50 after August of 2007." (Opening Br. 9.)

But it is unclear how this nitpick of the ALJ's statement at all helps Thomas. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it."). The only GAF score in the record after August 2007 is the score of 55 articulated in Ms. Ellsworth's January 2009 medical impairment questionnaire. As the ALJ observed, this GAF score, which is indicative of moderate symptoms, is internally inconsistent with Ms. Ellsworth's rather dire description of Thomas's residual mental functioning in the medical source statement. Of course, an ALJ may discount an opinion that is internally inconsistent. *See Zblewski v. Astrue*, 302 F. App'x 488, 493-94 (7th Cir. 2008) (unpublished) (affirming the ALJ's discounting of a nurse's opinion where it was inconsistent with the medical evidence of record); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Therefore, "the ALJ's analysis of the GAF scores is amply supported by the hearing record, and [Thomas's] argument amounts to nothing more than a dislike of the ALJ's phraseology." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

Next, Thomas takes issue with the ALJ's summation that his mental status examinations after August 2007 reflect an improvement in symptoms, which the ALJ found contrasted sharply with Ms. Ellsworth's restrictive January 2009 medical source statement. Thomas argues in his opening brief that the ALJ mischaracterized the evidence when she stated Thomas's two most recent examinations were normal. (Opening Br. 9-10.) But Thomas abandons this argument in

his reply brief, and wisely so, as the ALJ correctly noted that Thomas's most recent two medical status examinations in May and July 2008 were normal and that his March 2008 examination was largely unremarkable, except for a blunted affect and helplessness in thought content. (Tr. 35-36.) Thus, Thomas's first argument stumbles at the outset.

In an attempt to bolster the argument, Thomas emphasizes that "mental illness is episodic," and thus normal examination findings on just one or two visits do not equate to an improvement in symptoms. (Opening Br. 10.) But Thomas bears the burden of providing evidence of disability. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability."). To reiterate, of the three mental examinations in 2008, two reflect entirely normal findings (Tr. 338-40, 379-81), and the other shows a blunted affect and helpless thought content, but appropriate behavior and mood, good insight and judgment, coherent thought form, no memory problems, no suicidal ideation, and a stable treatment response (Tr. 345-47). Moreover, all three evaluations indicate that Thomas's medications were adequately addressing his symptoms (Tr. 340, 347, 381), and at his March 2008 examination, he was "encouraged to keep busy" (Tr. 347). As a result, Thomas's "episodic" assertion fails to remedy the deficiencies in this argument.

Not to be deterred, Thomas contends that the ALJ failed to consider Ms. Ellsworth's opinion that the stress of returning to work would likely exacerbate his mental symptoms, which would eradicate any improvement he has experienced. (Opening Br. 9-10.) But the ALJ *did* indeed consider this opinion, expressly acknowledging that Ms. Ellsworth thought Thomas's "functioning would decrease if he tried to work full time." (Tr. 35.) She nevertheless concluded

that Ms. Ellsworth's concern, to the extent it was supported by the record, was adequately accommodated by the RFC limiting Thomas to tasks that involve only brief interactions with others and that do not require a fast pace. (Tr. 33, 36.) Thus, Thomas's argument that the ALJ ignored this evidence is more accurately characterized as a plea to assign more weight to the nurse's opinion on this point, which the Court cannot do. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (emphasizing that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner"). In sum, the ALJ's discounting of Ms. Ellsworth's restrictive 2009 opinion on the basis that it was inconsistent with the findings on the 2008 mental status examinations is supported by substantial evidence. *See Zblewski*, 302 F. App'x at 493-94; 20 C.F.R. § 416.927(c)(4).

In his next argument, Thomas asserts that the ALJ "played doctor" when discounting Ms. Ellsworth's opinion by considering that Thomas had never required inpatient hospitalization for his mental symptoms. This assertion is another nonstarter; when weighing Ms. Ellsworth's opinion, the ALJ was entitled to consider her clinical findings, which were largely unremarkable in 2008, and the course of treatment that Thomas was prescribed. *See* 20 C.F.R. 416.927(c)(2) (articulating that an ALJ may consider "the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories" when deciding the weight to assign to a medical opinion). The ALJ cited Thomas's lack of inpatient psychiatric hospitalizations as simply one reason why Ms. Ellsworth's restrictive opinion describing him as having "no useful ability to function" in twelve of twenty-three mental activities was inconsistent with the record. (Tr. 36); *see, e.g.*, *Honeysett v.*

*Astrue*, No. 1:11-cv-369, 2012 WL 3656425, at *11 (N.D. Ind. Aug. 23, 2012) (rejecting claimant's argument that the ALJ "played doctor" when he used her lack of inpatient psychiatric hospitalizations as one illustration of how her treating physician's opinion was not consistent with the record as a whole).

Next, Thomas nitpicks the ALJ's comment "that even Ms. Ellsworth admitted that the claimant had fair ability to understand, remember, and carry out short, simple instructions." (Tr. 36.) He argues that "fair" means he can perform the activity satisfactorily "some" of the time (Tr. 393), which is not inconsistent with a finding of disability. But the ALJ already had observed that Ms. Ellsworth's medical source statement sharply contrasts with the 2008 medical status examination findings reflecting that Thomas had no memory problems and good insight and judgment; thus, the ALJ had ample reason to discount her opinion. It appears that the ALJ made this comment simply to illustrate that even Ms. Ellsworth agreed that Thomas had some ability to perform work involving simple instructions.

And finally, Thomas argues that the ALJ erred by failing to consider and evaluate the "checklist" factors set forth in 20 C.F.R. § 416.927 when weighing Ms. Ellsworth's opinion. *See* SSR 06-03P. But the ALJ *did* expressly acknowledge several of these factors. She considered that Thomas first began mental health treatment at Park Center in November 2006, that is, *after* filing his application for SSI. (Tr. 34-35.) She also noted that Ms. Ellsworth was a registered nurse at Park Center; that Thomas received services there through at least 2008; that the treatment course consisted of medication only in 2007 and medication and therapy in 2008; and that when participating, Thomas saw a counselor once a month and attended group therapy weekly. (Tr. 34-36.) Therefore, the ALJ adequately considered the length of the treatment

13

relationship, the nature and extent of the treatment relationship, and Ms. Ellsworth's specialization in accordance with 20 C.F.R. § 416.927(c). No more can be expected of the ALJ.

In short, the Court's decision to discount Ms. Ellsworth's opinion is supported by substantial evidence, and therefore the Commissioner's final decision will be affirmed. *See Young*, 362 F.3d at 1001 ("[The Court's] task is limited to determining whether the ALJ's factual findings are supported by substantial evidence."); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000) ("[W]e cannot reweigh the evidence or substitute our own judgment for that of the ALJ.").

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Thomas.

SO ORDERED.

Enter for this 18th day of October, 2012.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge